# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

WESTON J. STOW

     v.                                                      Case No. 23-cv-455-SM-TSM

COMMISSIONER, NEW HAMPSHIRE
DEPARTMENT OF CORRECTIONS, et al.

## REPORT AND RECOMMENDATION

Weston J. Stow, who was incarcerated at the Northern Correctional Facility ("NCF") in Berlin, New Hampshire, and who is self-represented, brings claims against the Commissioner of the New Hampshire Department of Corrections ("DOC") and other DOC officials, arising from an assault on Stow by other inmates.[1] The complaint is referred to this magistrate judge for preliminary review under LR 4.2(d)(2) and 28 U.S.C. § 1915(e)(2). For the reasons that follow, the undersigned magistrate judge recommends dismissing Stow's Eighth Amendment claim under 42 U.S.C. §1983 for damages brought against defendants in their official capacities and recommends dismissing the state law claims against defendants in their official capacities and the state law claim for negligence per se.  In a separate order issued on this date, Stow's claims are served as follows: (1) for damages arising from defendants' failure to protect Stow in violation of the Eighth Amendment brought against defendants in their individual capacities; (2) for a declaratory judgment arising from defendants' failure to protect Stow in violation of the Eighth Amendment against defendants in their individual and official capacities, (3) for damages arising from negligence brought against defendants in their individual capacities; (4) for damages arising

---

[1] Stow is now at the New Hampshire State Prison for Men in Concord, New Hampshire. Doc. no. 11.

from negligent infliction of emotional distress against defendants in their individual capacities; and (5) for damages arising from intentional infliction of emotional distress against defendants in their individual capacities.

## LEGAL STANDARD

The magistrate judge is authorized to conduct preliminary review of actions that are filed in forma pauperis. LR 4.3(d). The magistrate judge may recommend to the district judge that one or more claims be dismissed if, among other things, the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2); LR 4.3(d).

In conducting preliminary review, the court determines whether, stripped of legal conclusions, and with all reasonable inferences construed in the plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While the court construes an unrepresented plaintiff's complaint liberally, the complaint must, nevertheless, include "the crucial detail of who, what, when, where, and how in order to provide fair notice of what the claims are and the grounds upon which they rest." Ngapey v. CMG Mortg., Inc., No. 2:24-CV-00004-NT, 2024 WL 3624331, at *3 (D. Me. July 31, 2024), R&R adopted, 2024 WL 3949486 (D. Me. Aug. 27, 2024) (cleaned up). In addition, the court must ignore "conclusory allegations, improbable inferences, and unsupported speculation." Hostar Marine Transp. Sys., Inc. v. United States, 592 F.3d 202, 207 (1st Cir. 2010).

## BACKGROUND

Stow was convicted in 1990 on charges of kidnapping, aggravated felonious sexual assault, and attempted aggravated felonious sexual assault. State v. Stow, 136 N.H. 598, 600 (1993). He

has been incarcerated since that time. He alleges that he is elderly and has medical issues that make him infirm. In an addendum to his complaint (doc. no. 6), Stow filed a declaration from another inmate, Scott B. Smith, who states that he witnessed the assault on Stow and provides information about the circumstances that lead to the assault. Doc. no. 6 at pgs. 2-6. The addendum is considered together with the complaint for purposes of preliminary review. Doc. nos. 1 & 6.

Stow was housed at NCF in C-Block, which he alleges is for elderly and infirm inmates and which he describes as a "prey block." Doc. no. 1 at pg. 3. Smith states in his declaration that C-Block also housed "sex offenders." <u>Id.</u> D-Block, in contrast, was a "predator block" that included known trouble makers and inmates with histories of violent behavior. <u>Id.</u> Stow alleges that it was the policy and practice of the prison not to mix D-Block inmates with C-Block inmates. <u>Id.</u>

In December 2020, NCF used the gym to house inmates with COVID 19. Doc. no. 1 at pg. 2. Inmates from D-Block were moved to the gym first. <u>Id.</u> As the disease spread, NCF moved inmates from C-Block and H-Block to the gym, with D-Block inmates. <u>Id.</u> Stow alleges that it was against prison policy to mix D-Block inmates with C and H-Block inmates. <u>Id.</u> at pgs. 2-3.

Stow was moved to the gym on December 16, 2020. Doc. no. 1 at pg. 3. Stow alleges that at that time, prison personnel knew that D-Block inmates were harassing C and H-Block inmates in the gym, including throwing full water bottles and other items at them. <u>Id.</u> Stow alleges that senior prison staff warned NCF officials that it was a bad idea to house D-Block inmates with C and H-Block inmates because violent encounters were likely. <u>Id.</u> Stow alleges that there had been verbal outbursts and threatening by D-Block inmates prior to his assault and that the staff was aware of that conduct. <u>Id.</u>

Smith reports in his declaration that on December 18, when he arrived at the gym after a positive COVID test, the tension was thick and D-Block inmates were targeting other inmates they thought were sex offenders. Doc. No. 6 at pg. 3. On December 19, the gym was full of sick inmates. Id. Major Scott Newton and another DOC official did a "walk through," and "numerous inmates voiced their concern over the danger they were in."[2] Id. Despite the inmates' concern, no security measures were provided to protect the targeted inmates. Id. As soon as the officials completed their walk through and left the area, "the assaults and targeting intensified." Id. at 4. By 10 p.m., the inmate aggression was "ramping up." Id. Smith reports that the D-Block inmates would read an inmate's charges out to all and then inmates would gang up on that inmate. Id. Smith states that is what happened to Stow, whom he describes as "an elderly man." Id.

Stow alleges that he was brutally and viciously attacked by three D-Block inmates on December 19. Doc. no. 1 at pg. 4. He alleges that the incident began when he found that his mattress had been thrown on the floor, and when he asked who did that, several inmates started toward him. Id. at pgs. 4-5. They punched and kicked him while he was in a defensive position. Id. at pgs. 6-7. When he could, he kicked back at one of the attackers. Id.

The Security Team arrived and took Stow to Reception where he was examined by a nurse. Doc. no. 1 at pg. 7. Stow alleges that the attack caused him to lose partial sight in his eye and injured several discs in his neck. Id. at pgs. 7-8. He alleges that the prison administration decided to return the C-Block inmates to their block after the assault on December 19, 2020. Id. at pg. 9. He states that when they were ready to leave the gym on December 19, Captain Berwick spoke to the group and said he told the administration that it was a very bad idea to mix C and D-Block inmates because it was foreseeable that aggression and violence would occur. Id. at pg. 17.

---

[2] Smith identifies the second official in his declaration, but his handwriting is not clear.

Berwick addressed Stow directly, apologized for the assault, and said again that he told the administration not to mix the blocks but they did not listen. Id. Captain Berwick then said that the administration was listening to him now. Id.

Stow alleges that Commissioner Hanks approved the decision to house C-Block and D-Block inmates in the gym together, despite the contrary prison policy. Doc. no. 1 at pg. 22. He alleges that Lynn-Marie Cusack as the supervisor of DOC's security and Paula Mattis as director of the DOC's medical and forensic services were in the chain of command to approve or disapprove the decision to move inmates to the gym, mixing blocks. Id. He also alleges that Warden Corey Riendeau and Major Scott Newton made the decision to mix C-Block and D-Block inmates in the gym despite advice from Captain Berwick and other staff that people would get hurt. Id. at pgs. 23-24. He also alleges that there were incidents in the gym on December 15 that required a response from the security team and that another inmate was injured so severely that he died. Id. at pgs. 24-25. As such, Hanks, Cusack, Mattis, Riendeau, and Newton are the named defendants in this case.[3]

Stow brings a federal claim pursuant to 42 U.S.C. § 1983 that defendants failed to protect him from attack by other inmates in violation of the Eighth Amendment. Doc. no. 1 at pgs. 31-32. He also brings state claims against defendants, alleging: 1- defendants were negligent because they did not follow prison policy on mixing inmates, which lead to the attack; 2-defendants were negligent per se; 3-defendants negligently inflicted emotional distress on him by housing him with D-Block inmates; and 4-defendants intentionally inflicted emotion distress. Id. at pg. 32.

---

[3] Stow lists those defendants on the second page of the complaint, in the "Parties" section.

**DISCUSSION**

As noted above, for purposes of preliminary review, the court must determine whether Stow stated an actionable claim.

**I.    Jurisdiction and Sovereign Immunity**

Subject matter jurisdiction in this case is based on a federal question: Stow's claim under the Eighth Amendment. 28 U.S.C. § 1331. Jurisdiction over his state law claims for negligence and infliction of emotional distress is supplemental to federal question jurisdiction. 28 U.S.C. § 1367(a). Stow names DOC Commissioner Helen Hanks, NCF Warden Corey Riendeau, DOC Director of Medical and Forensic Services Paula Mattis, DOC Director of Professional Standards Lynn-Marie Cusack, and NCF Major Scott Newton as defendants.[4] He states that they are sued in their individual and official capacities. Stow seeks compensatory and punitive damages and a declaratory judgment that defendants' actions violated the Eighth Amendment and constitute state common law torts of negligence and infliction of emotional distress.

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." Virginia Off. for Prot. & Advoc. v. Stewart, 563 U.S. 247, 253 (2011). Sovereign immunity, under the Eleventh Amendment, prevents a plaintiff from suing a state in federal court for money damages unless the state waived sovereign immunity or immunity is abrogated by federal law. Id. at 253-54. When state officials are sued in their official capacities, the suit is against the state. Will v. Mich. Dept. of State Police, 491 U.S. 58, 71 (1989). An exception to sovereign immunity exists

---

[4] In the "Parties" section of the complaint, Stow alleges that "Lynn-Marie Cusack" was the "Director of Professional Standards and Training" but later alleges that Cusack supervised DOC security. See Doc. no. 1 at pg. 2. In other cases, Lynmarie C. Cusack is identified as an attorney in the New Hampshire Attorney General's Office. See, e.g., Johnson v. Englander, Case No. 20-cv-398-JL, 2023 WL 159640 (D.N.H. Jan. 11, 2023); Stow v. McGrath, Case No. 17-cv-088-LM, 2021 WL 1178303 (D.N.H. Mar. 29, 2021).

under Ex parte Young, 209 U.S. 123 (1908), when a plaintiff sues a state official in his or her official capacity and seeks only a declaratory judgment or prospective injunctive relief. Reed v. Goertz, 598 U.S. 230, 234 (2023).

    A.  Section 1983 Claim – Eighth Amendment

    "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, . . . [and] is no different from a suit against the State itself." Will, 491 U.S. at 71. Because of the protection provided by sovereign immunity, "neither a State nor its officials acting in their official capacities are 'person' under § 1983." Id. For that reason, Stow cannot bring a § 1983 claim for damages against any of the defendants in their official capacities. Thus, the district judge should deny Stow's claim in this regard. Stow may, however, bring a § 1983 claim against defendants in their official capacities for a declaratory judgment on his § 1983 claim.

    B.  State Law Claims – Negligence and Infliction of Emotional Distress

    In RSA Chapter 541-B, titled "Claims Against the State," the State of New Hampshire waived "sovereign immunity for tort claims against state agencies in certain circumstances." Petition of N.H. Div. for Children, Youth & Families, 175 N.H. 596, 598 (2023). The statute has "comprehensive procedures and guidelines for bringing claims that would otherwise be barred by sovereign immunity, against the state, its agencies and employees." Conservation Law Found., Inc. v. Pease Dev. Auth., 2017 DNH 202, 2017 WL 4310997, at *7 (D.N.H. Sept. 26, 2017). In particular, the state Board of Claims "shall have original and exclusive jurisdiction" on all claims not exceeding $5,000 against state agencies, and "the superior court shall have original and exclusive jurisdiction of all claims in excess of $50,000 against any agency." RSA 541-B:9, II & IV.

The State of New Hampshire waived sovereign immunity only to the extent provided in RSA Chapter 541-B, which permits certain claims to be brought against the state in the New Hampshire Board of Claims and Superior Court. Id.  Because the state limited its waiver of sovereign immunity, Stow cannot bring his state law claims against defendants in their official capacities here. See, e.g., Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir 2003) (construing "exclusive jurisdiction" provided in Massachusetts Tort Claims Act to mean that the state did not waive sovereign immunity for suit in federal court); Daly v. Mason, 23-cv-40162, --- F. Supp. 3d ---, 2024 WL 4425628, at *3 (D. Mass. Sept 30, 2024) (same).  Therefore, the district judge should dismiss Stow's state law claims against defendants in their official capacities.

C. Summary

The district judge should dismiss Stow's Eighth Amendment damages claims under § 1983 against the named defendants in their official capacities and should dismiss all state law claims against the named defendants in their official capacities. The court continues with preliminary review to determine whether Stow has alleged facts sufficient to state an Eighth Amendment claim for damages against defendants in their individual capacities and for declaratory relief in their individual and official capacities and whether Stow has alleged facts sufficient to proceed on the state law claims against defendants in their individual capacities.

II.    **Eighth Amendment – Failure to Protect**

Stow alleges that his assault was the result of defendants' decision to move C-Block inmates to the gym where D-Block inmates were housed for Covid-19 quarantine. To state an Eighth Amendment violation, Stow must allege facts that show he was "incarcerated under conditions posing a substantial risk of serious harm," and that defendants "acted, or failed to act, with deliberate indifference to inmate health or safety." Lakin v. Barnhart, 758 F.3d 66, 70 (1st

Cir 2014). A substantial risk of serious harm is a risk that is "'objectively intolerable.'" Id. at 71 (quoting Farmer v. Brennan, 511 U.S. 825, 846 (1994)). Deliberate indifference exists when officials know of a substantial risk and fail to take reasonable measures in response. Farmer, 511 U.S. at 847.

Taken in the light most favorable to Stow, he alleges that the defendants knew of the danger of mixing C-Block and D-Block inmates and knew that D-Block inmates were threatening and harassing C-Block inmates at the time he was assaulted. He also alleges that the prison policy was not to mix D-Block and C-Block inmates and that Captain Berwick warned the administrators not to mix inmates from those blocks. He alleges that the decision to mix those inmates and to leave them together in the gym caused the attack on him, which violated the Eighth Amendment. Stow's allegations taken as true demonstrate that the defendants knew of the danger to him of being housed in the gym with D-Block inmates and failed to take reasonable measures to protect him, which resulted in the assault on him and his injuries. See Farmer v. Brennan, 511 U.S. 825, 833 (1970) (cleaned up) ("Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course."). Those allegations, taken as true, state a violation of the Eighth Amendment.

Accordingly, in an order issued this date, the court directs service of the Eighth Amendment failure to protect claim for damages on the named defendants in their individual capacities and for the same claim to be served on the defendants for a declaratory judgment in their individual and official capacities.

### III.    <u>State Law Claims</u>

Stow brings state law claims against the same defendants for negligence, negligence per se, negligent infliction of emotional distress, and intentional infliction of emotional distress.[5]

#### A. <u>Negligence</u>

Stow alleges that defendants were negligent for the same reasons that he alleges they violated the Eighth Amendment. To state a claim for negligence under New Hampshire law, a plaintiff must allege facts to show that the defendant owed the plaintiff a duty, breached the duty, and the breach proximately caused the plaintiff harm. Christen v. Fiesta Shows, Inc., 170 N.H. 372, 375 (2017). "Ordinarily there is no duty to control the conduct of a third person to prevent the third person from causing harm to another person." Id. at 375 (internal quotation marks omitted). Despite that ordinary rule,  "a duty may arise because: (1) a special relationship exists; (2) special circumstances exist; or (3) the duty has been voluntarily assumed." Id. (internal quotation marks omitted). "In the prison context, a prison officer has a duty to prevent prisoners from injuring other inmates if the officer knows of a risk of injury or knows facts that would lead a reasonable person so to believe and the officer's reckless disregard for the prisoner's safety proximately caused harm to the inmate." Robie v. N.H. Dept. of Corrs. Comm'r, Case No. 22-cv-7-JL, 2023 WL 4748559, at *3 (D.N.H. June 28, 2023) (internal quotation marks and citation omitted).

For the reasons stated above in the context of the Eighth Amendment claim, Stow alleges sufficient facts to support a negligence claim. He alleges facts to show that defendants had a duty

---

[5] These are the predominant state law claims alleged by Stow. Although he also mentions assault and battery, he does not include any of the inmates that engaged in the attack on him as defendants or provide facts to support assault or battery claims against the named defendants. To the extent Stow intended to raise other state law claims, he may seek leave to amend his complaint accordingly.

to him because of his status as an inmate in the prison where they were officials and administrators. He alleges facts to show that they knew of the risk of harm to vulnerable inmates in C-Block if they were housed with inmates from D-Block, and he further alleges that prison policy did not allow that mixing. Despite their knowledge of the risk of harm, they put C-Block and D-Block inmates together in the gym. D-Block inmates were aggressive toward C-Block inmates, and on December 19 Stow was assaulted and injured in an attack by D-Block inmates. Thus, in an order issued this date, the court directs service of the negligence claim on the named defendants in their individual capacities.

To the extent Stow intended to bring a separate negligence per se claim, he has not alleged facts to support that claim. Under New Hampshire law, "[t]he doctrine of negligence per se . . . provides that where a cause of action . . . exist[s] at common law, the standard of conduct to which a defendant will be held may be defined as that required by statute, rather than the usual reasonable person standard." Town of Londonderry v. Mesiti Dev., Inc., 168 N.H. 377, 384 (2015) (cleaned up).  To impose the statutory standard of care, the plaintiff must be a member of the class of people that the statute was intended to protect, and the plaintiff's injury must be "of the type which the statute intended to protect against." Id. (cleaned up).

The only statutes that Stow cites are RSA541:B-2, II  and 541-B:19(d). Those statutes are part of the statutory procedure for bringing claims against the State of New Hampshire that is addressed above in Part I, and neither statute provides a standard of care.[6] As such, Stow does not state a negligence per se claim, and the district court should dismiss that claim.

---

[6] RSA 541-B:2 does not include subparts, as cited by Stow, and instead simply establishes the Board of Claims. RSA 541-B:19 provides exceptions to the state's waiver of sovereign immunity.

C.  Negligent Infliction of Emotional Distress

Stow brings a claim for negligent infliction of emotional distress, arising from the circumstances of the assault. "To state a claim for negligent infliction of emotional distress, a plaintiff must allege '(1) causal negligence of the defendant; (2) foreseeability; and (3) serious mental and emotional harm accompanied by objective physical symptoms.'" William Soler Justice v. Sununu, No. 20-CV-517-PB, 2024 WL 1179176, at *7 (D.N.H. Mar. 19, 2024) (quoting O'Donnell v. HCA Health Servs. of N.H., 152 N.H. 608, 611 (2005)).

The first two elements are repetitive of the elements of the negligence claim. As to the third element, Stow alleges that he has had depression, anger, shame, and emotional detachment since the assault. He also alleges that he has severe nightmares and difficulty sleeping. At this stage, Stow's allegations are sufficient to state a negligent infliction of emotional distress claim. See, e.g., Ahern v. Sig Sauer, Inc., Case No. 21-cv-11007, 2021 WL 5811795, at *3 (D. Mass. Dec. 7, 2021) (allowing amended complaint to add allegations of inability to sleep related to mental health allegations).

In an order issued this date, the court directs service of the negligent infliction of emotional distress claim on the named defendants in their individual capacities.

D.  Intentional Infliction of Emotional Distress

Stow also alleges that defendants are liable for intentional infliction of emotional distress. "'In order to make out a claim for intentional infliction of emotional distress, a plaintiff must allege that a defendant by extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to another.'" Sununu, 2024 WL 1179176, at *6 (quoting Tessier v. Rockefeller, 162 N.H. 324, 341 (2011)). The standard for an intentional infliction of emotional distress claim is high, requiring allegations to show that defendants' actions were "'so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" Id. (quoting Moss v. Camp Pemigewassett, Inc., 312 F.3d 503, 511 (1st Cir. 2002)). This may or may not be the extreme case that would support a claim for intentional infliction of emotional distress. But at this early stage of the case and considering the pro se plaintiff, Stow has alleged sufficient conduct to allow the claim to proceed.

In an order issued this date, the court directs service of the intentional infliction of emotional distress claim on the named defendants in their individual capacities. The court recommends that the district judge dismiss this claim against the defendants in their official capacities.

**CONCLUSION**

For the above reasons, the undersigned magistrate judge recommends dismissing the Eighth Amendment claim under §1983 for damages brought against defendants in their official capacities and recommends dismissing the state law claims against defendants in their official capacities and dismissing the negligence per se claim.

In an order issued this date, the court directs service of the following claims against Helen Hanks, Corey Riendeau, Paula Mattis, Lynn-Marie Cusack, and Scott Newton:

1. Failure to protect in violation of the Eighth Amendment actionable under § 1983 against defendants in their individual capacities for damages.

2. Failure to protect in violation of the Eighth Amendment actionable under § 1983 against defendants in their individual and official capacities for declaratory relief.

3. Negligence against defendants in their individual capacities.

4. Negligent infliction of emotional distress against defendants in their individual capacities.

5. Intentional infliction of emotional distress against defendants in their individual capacities.

Any objections to this Report and Recommendation must be filed within **fourteen days** of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Only those issues raised in the objection to this Report and Recommendation are subject to review in the district court. See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010). Any issues not preserved by such objection(s) are precluded on appeal. See id. Failure to file any objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

Talesha L. Saint-Marc
United States Magistrate Judge

January 6, 2025

cc.    Weston J. Stow, pro se