UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Weston J. Stow,
        Plaintiff

        v.                                    Case No. 23-cv-455-SM-TSM
                                              Opinion No. 2026 DNH 100

Commissioner, New Hampshire
Department of Corrections, et al.,
        Defendants

**O R D E R**

Weston Stow is an inmate currently incarcerated at the New Hampshire State Prison for Men in Concord, New Hampshire.  He brings this action seeking both monetary and declaratory relief, alleging that the defendants failed to protect him from a foreseeable attack by other inmates, in violation of his rights under the Eighth Amendment.  See generally 42 U.S.C. § 1983.  He also brings various related state law tort claims over which he asks the court to exercise supplemental jurisdiction.  The defendants move to dismiss asserting, among other things, that Stow failed to exhaust his administrative remedies.

For the reasons discussed, it is plain from the face of the complaint that Stow failed to fully and properly exhaust available prison administrative remedies related to the assault.

In short, he failed to initiate the inmate grievance procedure related to that assault in a timely manner.  Accordingly, defendants' motion to dismiss Stow's federal claims under § 1983 is granted.  As for Stow's state law claims, the court declines to exercise supplemental jurisdiction and they are dismissed without prejudice to refiling in state court.

**Standard of Review**

When considering a motion to dismiss, the court accepts all well-pleaded facts alleged in the complaint as true, disregards legal labels and conclusions, and resolves reasonable inferences in the plaintiff's favor.  See Galvin v. U.S. Bank, N.A., 852 F.3d 146, 155 (1st Cir. 2017).  The court may also consider documents referenced by or incorporated into the complaint, as well as documents whose authenticity is not disputed by the parties.  See, e.g., Sierra v. Bisignano, 158 F.4th 43, 49 (1st Cir. 2025); Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018).

To avoid dismissal, the complaint must allege sufficient facts to support a "plausible" claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  To satisfy that plausibility standard, the factual allegations in the complaint, along with reasonable inferences drawn from them, must show more

2

than a mere possibility of liability – that is, "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also Lyman v. Baker, 954 F.3d 351, 359–60 (1st Cir. 2020) ("For the purposes of our [12(b)(6)] review, we isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements.") (citation and internal punctuation omitted).

In other words, the complaint must include well-pled (i.e., non-conclusory, non-speculative) factual allegations as to each of the essential elements of a viable claim which, if assumed to be true, allow the court to draw the reasonable and plausible inference that the plaintiff is entitled to the relief sought. See Tasker v. DHL Retirement Savings Plan, 621 F.3d 34, 38-39 (1st Cir. 2010).

## Background

As part of her preliminary review of Stow's complaint, the magistrate judge set forth in detail the factual allegations underlying Stow's claims.  See Report and Recommendation (document no. 12) at 2-5.  For purposes of addressing defendants' motion to dismiss, it is sufficient to note the following.

Stow was convicted in 1990 on charges of kidnapping, aggravated felonious sexual assault, and attempted aggravated felonious sexual assault.  State v. Stow, 136 N.H. 598, 600 (1993).  He has been incarcerated since that time.  He alleges that he is elderly and has medical issues that render him infirm.

At all times relevant to his complaint, Stow was housed at the Northern Correctional Facility, a state-operated prison in Berlin, New Hampshire ("NCF").  According to the complaint, Stow was detained in C-Block, which he alleges is for elderly and infirm inmates, and which he describes as a "prey block." Complaint (document no. 1) at 3.  D-Block, on the other hand, was a "predator block" that includes known trouble-makers and inmates with histories of violent behavior.  In December 2020, NCF used the prison's gymnasium to house and isolate inmates who had tested positive for COVID 19.  As the disease spread, NCF moved inmates from C-Block (and H-Block) to the gym, along with D-Block inmates.  Stow alleges that it was against prison policy to mix D-Block inmates with C and H-Block inmates and says prison officials knew that housing those inmates together would likely lead to violence.

4

Indeed, says Stow, prior to his transfer prison personnel knew that D-Block inmates were already harassing C and H-Block inmates in the gym - conduct that included throwing full water bottles and other items at them.  Id.  He also says there had been verbal outbursts and threats made by D-Block inmates prior to the assault on him, and that prison staff was aware of such conduct.  Finally, says Stow, there were incidents in the gym on or around December 15 that required a response from the security team.  He claims one inmate was injured so severely that he died.  Id. at 24.

Nevertheless, on December 16, 2020, prison officials moved Stow to the isolation area in the gym.  He alleges that he was brutally attacked by three D-Block inmates just three days later (on December 19).  According to Stow, he suffered significant and lasting physical and emotional injuries, including the partial loss of sight in one eye and damage to several discs in his neck.  In the wake of that attack, says Stow, the prison administration decided to return the C-Block inmates to their original cell block.

Based upon those factual allegations and the legal claims advanced in the complaint (as amended), the magistrate judge

concluded that Stow plausibly alleges sufficient facts to support the following federal and state law claims:

1.    Failure to protect in violation of the Eighth Amendment, actionable under § 1983 against defendants in their individual capacities for damages.

2.    Failure to protect in violation of the Eighth Amendment, actionable under § 1983 against defendants in their individual and official capacities for declaratory relief.

3.    Negligence against defendants in their individual capacities.

4.    Negligent infliction of emotional distress against defendants in their individual capacities.

5.    Intentional infliction of emotional distress against defendants in their individual capacities.

Report and Recommendation at 13-14.

## Discussion

I.    The PLRA and Administrative Exhaustion.

Title 42, Section 1997e of the U.S. Code, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a) (emphasis supplied).  The Supreme Court has held that section 1997(e) requires an inmate to exhaust all available administrative processes before filing a federal suit that relates to the conditions of his or her confinement, even if some or all of the relief the inmate seeks cannot be obtained through those administrative processes.  See Booth v. Churner, 532 U.S. 731, 734 (2001) ("The question is whether an inmate seeking only money damages must complete a prison administrative process that could provide some sort of relief on the complaint stated, but no money.  We hold that he must.").

Subsequently, the Supreme Court made explicit that which was implicit in Booth: the phrase "with respect to prison conditions," as used in the PLRA's exhaustion provision, incorporates within its scope not just conditions generally affecting the inmate population, but also discrete incidents affecting only a single individual.

> [T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

Porter v. Nussle, 534 U.S. 516, 532 (2002).  And, most recently, the Court held that the PLRA exhaustion requirement requires

"proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 83 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91 (footnote omitted).

So, to properly exhaust available administrative remedies, a prisoner must file grievances (and appeals) on the forms, in the place, and within the time limits prescribed by the prison's administrative rules. Federal claims for which administrative remedies have not been properly exhausted are subject to dismissal. Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002).

II.   The Grievance Procedure at NCF.

The New Hampshire Department of Corrections has established a three-tiered system by which inmates may request a formal review of issues related to any aspect of their confinement. The regulations governing those grievance procedures are set forth in New Hampshire's Administrative Rules, Department of Corrections, Chapter Cor. 300. See N.H. Code Admin. R. Cor. 313.01, et seq. As a preliminary matter, an inmate must attempt to resolve any issues or complaints informally, at the lowest

level possible.  See Id. at 313.03(a) and 313.04(d).  If that is unsuccessful, the inmate may begin the grievance process by filing a "formal complaint" (typically in the form of an inmate request slip or "IRS") to the highest-level authority within a housing unit or work area.  Cor. 313.04(d).  Importantly, an inmate must file that IRS "within 30 calendar days of the date on which the event being reported occurred."  Cor. 313.04(f) (emphasis supplied).  Additionally, "a formal complaint shall contain sufficient detail to allow for investigation," and must, at a minimum, include: "(1) The resident's name; (2) The date of the occurrence; (3) The name(s) of departmental staff involved; (4) The name of witnesses; (5) The nature of the complaint; (6) The violation of policy, rule, or law; and (7) The relief or action which is sought."  Cor. 313.04(g).

If the inmate is dissatisfied with the response to the IRS, the inmate may, within 15 days of receiving that response, escalate the complaint by filing a "Level I Grievance" to the warden.  Cor. 313.05.  After obtaining a written response to the Level I Grievance, the prisoner can escalate the issue a final time by submitting it to the Commissioner as a Level II Grievance.  Cor. 313.06.  The Level II Grievance must be submitted within 15 days after the inmate received a response to the Level I Grievance.  The Level II Grievance undergoes the

9

same process as the Level I Grievance and the Commissioner must respond to the inmate's complaint in writing within 30 calendar days of receipt.  Cor. 313.06 (k), (n), and (o).

So, to fully and properly exhaust administrative remedies as to any particular complaint, an inmate in the custody of the New Hampshire Department of Corrections must complete each of the three steps of the inmate grievance process in the order and within the timeframes prescribed.  That is, he must timely file an IRS, followed by a timely Level I Grievance to the warden, and then a timely Level II Grievance to the Commissioner.  The inmate may not file suit under any federal law with respect to any specific event, issue, or complaint until it has been fully and properly grieved.  See generally Doiron v. Brown, No. 21-CV-360-SM, 2023 WL 3456884, at *2 (D.N.H. May 15, 2023).

III. Lack of Exhaustion is an Affirmative Defense.

Under the PLRA, an inmate's failure to fully and properly exhaust available prison administrative remedies is an affirmative defense that a defendant must plead and prove; exhaustion is not a pleading requirement for the plaintiff. See, e.g. Jones v. Bock, 549 U.S. 199, 216 (2007). Nevertheless, that does not mean that the failure to exhaust cannot form the basis of a meritorious motion to dismiss.

10

"Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract." Id. at 215.  See also Gray v. Evercore Restructuring L.L.C., 544 F.3d 320, 324 (1st Cir. 2008) ("Where a court grants a Rule 12(b)(6) or Rule 12(c) motion based on an affirmative defense, the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude.") (citations and internal punctuation omitted).  As the Bock court explained:

> A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief.  If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim; that does not make the statute of limitations any less an affirmative defense.

549 U.S. at 215.

In short, then, if an inmate's complaint alleges administrative exhaustion but, at the same time, the complaint reveals that the inmate did not fully and properly exhaust (e.g., the inmate's initial complaint was not timely filed), it

11

is properly subject to dismissal.  In that situation, the fact that exhaustion is an affirmative defense is not obstacle to dismissal.

So, for example, in circumstances not unlike those presented by Stow's complaint, the Court of Appeals for the Third Circuit concluded that the dismissal of an inmate's complaint for failure to exhaust was proper.

> We agree with Talley that exhaustion of prison administrative remedies is an affirmative defense. . . . The Supreme Court has explained that the ordinary pleading rule — that a plaintiff need not plead the absence of an affirmative defense or otherwise plead around it — applies in the PLRA context.  Nevertheless, "[w]hether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground."  <u>Accordingly, where a prisoner's failure to exhaust under the PLRA is apparent from the face of the complaint, a district court may dismiss it on that basis</u>.
>
> [Here,] though not required, Talley's complaint contains a section he labeled "Exhaustion of Administrative Remedies." . . .  Taking [the plaintiff's] assertions at face value, Defendants' exhaustion defense is manifest in Talley's complaint.

<u>Talley v. Clark</u>, 111 F.4th 255, 264 (3d Cir. 2024) (quoting <u>Jones v. Bock</u>, 549 U.S. at 215) (emphasis supplied)).

12

IV.    <u>Stow Failed to Fully and Properly Exhaust</u>.

As noted above, Stow alleges that he was attacked by other inmates on December 19, 2020.  Consequently, to begin the grievance process, Stow had until <u>January 18, 2021</u> to file an IRS related to that incident.  Based upon the allegations in his complaint, and the exhibits attached to that complaint (as well as his response to defendant's motion to dismiss), it is plain that he failed to do so.

In support of the assertion that he fully and properly exhausted available prison administrative remedies, Stow has attached several documents to his complaint that include approximately 12 Inmate Request Slips, Level I Grievances, and Level II Grievances.  The first Inmate Request Slip referenced in his complaint was filed on March 21, 2021 - 92 days after the assault and 62 days after the governing deadline had expired.  <u>See</u> Complaint at para. 55 ("First Grievance - 3-21-2021").  <u>See</u> <u>also</u> Copy of Inmate Request Slip (document 1-3) at 1 (the "March IRS").  Plainly, then, that IRS was not timely filed (i.e., within 30 days of the underlying event at issue).

Moreover, that March IRS was substantively deficient.  In it, Stow simply asked for the identity of the prison official(s) who made the decision to move him to the medical isolation area

13

in the gym.  He made no mention of the attack, or his injuries, or his belief that prison authorities failed to adequately protect him.  Consequently, even if that IRS had been timely submitted, it was still insufficient to place prison authorities on notice of Stow's claims and begin the exhaustion process related to those claims.  See generally Woodford, 548 U.S. at 90 (noting that requiring inmates to administratively exhaust their claims is designed "to give the agency a fair and full opportunity to adjudicate their claims," which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits))." (emphasis supplied).  See also Cor. 313.04(g) (specifying the details that must be set forth in any IRS, including the relief requested by the inmate).

That failure to file a timely (and proper) IRS related to the attack on December 19 dooms Stow's assertion that he exhausted.  He did not.  Having failed to timely initiate the inmate grievance process, he could not "cure" that deficiency by simply continuing with the process and filing Level I and/or Level II Grievances related to the assault (as he appears to have done).  His ability to fully and properly exhaust administrative remedies ended when he failed to file a proper IRS related to the attack on or before January 18, 2021.

14

Nevertheless, the court will briefly address the other documents on which Stow relies.

In his complaint, Stow also points to a Level I Grievance Form that he filed on May 7, 2021 (139 days after the attack). See Complaint at para 58 ("May 7, 2021 Grievance to Warden Riendeau").  See also Grievance Form (document no. 1-3) at 5. Although that grievance did inform prison officials of Stow's intent to "exercise his lawful rights to bring suit against" them for "violating [his] U.S. Const. rights under the 1st, 5th, 8th, and 14th Amends," see id. at 5-7, it was not preceded by or in any way related to a timely IRS.  And, to the extent Stow might be claiming that it was an appeal of the (untimely) March IRS, such an "appeal" was itself untimely (i.e., it was filed on May 7, 2021, substantially more than 15 days after prison officials responded to the March IRS, on March 23, 2021). Similarly, the Level II Grievance that Stow filed on June 1, 2021, was also untimely because it was filed more than 15 days after he received a response to his Level I grievance on May 10, 2021 (and, like the Level I grievance, it was wholly untethered to any timely IRS relating to the attack).  See Grievance Form (document no. 1-3) at 8.

15

It is, then, plain from the face of the complaint that Stow did not fully and properly exhaust available prison administrative remedies related to the attack - that is to say, he failed to properly initiate the prison's grievance process with a <u>timely</u> <u>IRS</u> related to that assault, including the elements required by Cor. 313.04(f).  And, necessarily, he failed to follow-up on a timely IRS with timely Level I and Level II grievances.  Consequently, his federal constitutional claims arising out of that attack must be dismissed.[1]

IV.   Stow's State Law Negligence Claims.

---

[1]    If more were necessary - it is not - defendants submitted the affidavit of Natasha Cole, Deputy Director of Classifications and Client Records for the New Hampshire Department of Corrections ("DOC") (document no. 24-2).  In short, Ms. Cole testified that her review of the relevant DOC records revealed that Stow did not fully and properly exhaust administrative remedies related to the December 19, 2020, assault.  Moreover, in his comprehensive objection to defendant's motion to dismiss (in which he again argues that he fully and properly exhausted), Stow continues to rely exclusively on the untimely IRS and grievance forms that are attached to his complaint - he does not allege he took any other steps to exhaust, nor does he point to any other IRS or grievance forms.
    To be clear, the court has not relied upon Ms. Cole's affidavit in ruling upon defendants' motion to dismiss. Standing alone, the complaint and the documents attached to it reveal that Stow failed to properly exhaust.  Nevertheless, the substance of Ms. Cole's affidavit, as well as Stow's response to it, make it plain that converting defendants' motion to one for summary judgment (as Stow seeks) would be an idle exercise and needless waste of resources.  Discovery cannot produce documents that Stow does not claim exist and that defendants have assured the court, under oath, do not exist.

16

Having concluded that Stow's federal claims must be dismissed for lack of proper exhaustion, the court must determine whether it is appropriate to exercise supplemental jurisdiction over his remaining state law claims.  The defendants ask the court to decline to exercise such jurisdiction, arguing that, "the interests of fairness, judicial economy, convenience, and comity dictate that the Court should decline to adjudicate the state law claims, and permit Mr. Stow to bring them in New Hampshire courts, if he chooses." Defendants' Memorandum (document no. 24-1) at 16.

Title 28, Section 1367, of the United States Code provides that the court may decline to exercise supplemental jurisdiction over a plaintiff's state law claim when:

> (1)  the claim raises a novel or complex issue of State law,
>
> (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)  the district court has <u>dismissed all claims over which it has original jurisdiction</u>, or
>
> (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (emphasis supplied).  To assist district courts, the Court of Appeals for the First Circuit has

17

identified the following additional factors that should be considered when determining whether to exercise supplemental jurisdiction over state law claims: (1) the interests of fairness; (2) judicial economy; (3) convenience; and (4) comity. See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  And, with regard to principles of fairness and comity, the Supreme Court has observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (footnote omitted).  See also Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."); Rivera-Diaz v. Humana Ins. of P.R., 748 F.3d 387, 392 (1st Cir. 2014) (citing Carnegie-Mellon and upholding district court's decision declining to exercise supplemental jurisdiction).

Given that the federal claims advanced in Stow's complaint have been resolved well in advance of any trial, and taking into account the factors identified in Camelio, as well as the defendants' expressed preference to litigate Stow's remaining claims in state court, the court declines to exercise supplemental jurisdiction over Stow's state law claims.

## Conclusion

None of the several grievance forms upon which Stow relies in asserting that he fully and properly exhausted available prison administrative remedies was filed within 30 days of the December 19, 2020 assault.  Consequently, Stow failed to timely initiate the first step in the prison's three-step grievance procedure.  His efforts to "exhaust" after that (by filing equally untimely Level I and Level II Grievances) were unavailing.

For the foregoing reasons, defendants' Motion to Dismiss (**document no. 24**) is granted.  Stow's Eighth Amendment claims are dismissed with prejudice.  His state law claims are also dismissed, albeit without prejudice to refiling in state court.  Plaintiff's Motion to Ignore Matters Outside the Pleadings (**document no. 26**) is denied as moot - the court has not relied

19

upon any documents that were not attached to or referenced in his amended complaint.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 23, 2026

cc:   Weston J. Stow, pro se
      Counsel of Record

20